# CASES

IN THE

# SUPREME JUDICIAL COURT

OF THE

# STATE OF MAINE.

ARTHUR J. FRYE, pro ami,

*vs.*

BATH GAS AND ELECTRIC COMPANY.

Sagadahoc.    Opinion February 12, 1900.

*Negligence.    Fellow-Servant.    Assumption of Risk.    Contributory Negligence.*
*Verdict.*

It is the duty of the master to provide a reasonably suitable and safe place
    where his servant can perform his work.    The neglect of that duty by the
    master's employees is the neglect of the master himself.

The plaintiff was a fireman employed in the boiler-room of the defendant and
    while thus at work fell into a hole that had been dug and left open, or in a
    dangerous state, in front of the boiler, by the defendant's employees who
    were making a foundation there for an economizer.    *Held;* that in leaving
    the hole uncovered, or the excavation in an unsafe condition, was negligence
    of the master; and that the doctrine as to negligence of a fellow-servant
    does not apply.

While it is settled law that a servant assumes the ordinary and apparent risks
    of his employment, he does not assume the risk from defects in the plant
    itself which the master is bound to make and keep reasonably safe.

The fact that a person takes voluntarily some risk is not conclusive evidence,
    under all circumstances, that he is not using due care.    Nor is knowledge of
    a danger, not fully appreciated, conclusive that the risk is his.

While the defendant may well be chargeable with negligence in not sufficiently
    covering the hole, considering its proximity to the boiler, where the plain-
    tiff was at work and also the method and exigencies of that work, *held;* that

it is peculiarly for the jury to decide whether he acted recklessly, regardless of his safety; or whether he exercised that degree of care to be reasonably expected in that situation and under all the circumstances.

The verdict of a jury is entitled to respect and should not be disturbed unless it is so clearly wrong as to compel the conclusion that it is the result of prejudice, or failure to comprehend the facts and the legitimate inferences therefrom, or is antagonized by some controlling rule of law.

ON MOTION BY DEFENDANT.

This was an action on the case to recover damages for injuries received by the plaintiff, a minor, twenty years of age, while in the employ of the defendant corporation at the city of Bath.

The plaintiff claimed that he had been in the service of the defendant for five months, or more, and for two months previous to March, 1898, he had served in the capacity of fireman in the defendant's power-house in Bath; and that while so employed he was injured through the negligence of the defendant corporation in the following manner.

It appears that in the fire-room where the plaintiff was employed, the defendant had caused four holes to be dug, of varying depths in which to place stone foundations for the support of iron pillars of a massive machine known as an "economizer", and required for the business of the power-house.

One of these holes, about two feet deep, was directly opposite the door of furnace number three, being some eleven feet distant.

The plaintiff had known of the existence of the hole, as he says, for three days.

On March 10, 1898, while "slicing" the fire in furnace number three, the plaintiff stepped backward and either fell into the hole, or across and upon a plank lying across the hole; from which fall he claimed to have received the injuries complained of, and recovered a verdict against the defendant corporation in the sum of $4,166.

Other facts are stated in the opinion.

*S. L. Fogg and F. E. Southard,* for plaintiff.

The plaintiff was a fireman, employed in the boiler-room, the operating department, as it were. The hole into which he fell was dug and left open, or in a dangerous state, by men in the

construction department.  These departments were wholly distinct, and in no way connected with or dependent on each other.  The foremen were different, and the men in charge of each department were under no orders, and owed no duty to the other.  *Donnelly* v. *Granite Co.*, 90 Maine, 110.

The danger flowing from the existence and non-covering of this hole was not an ordinary danger incident to plaintiff's employment.  It is too much to say that it is an ordinary or natural incident for an employer to dig pitfalls under the feet of his firemen into which he might, in the performance of his duties as such, be liable to fall.  It nowhere appears that the plaintiff had an appreciating knowledge of the dangerous condition of the hole before he fell.  *Campbell* v. *Eveleth*, 83 Maine, 59.  Mere knowledge of a danger will not preclude a plaintiff from recovering unless he appreciates it. *Mundle* v. *Hill Mfg. Co.*, 86 Maine, 400, and cases.  Momentary forgetfulness of a danger is not necessarily conclusive proof of negligence.  *Kelly* v. *Blackstone*, 147 Mass. 448 ; *McQuillan* v. *Seattle*, . 10 Wash. 467, (45 Am. St. Rep. 802).  That knowledge and appreciation of the danger, in this class of cases, must co-exist in order to charge a plaintiff with contributory negligence is held by all the cases.  *Mundle* v. *Hill Mfg. Co.*, supra.

*C. W. Larrabee and Geo. E. Hughes*, for defendant.

Plaintiff was perfectly familiar with his service as fireman in that place, and all its requirements and surroundings.  As fireman he was required to wheel coal into the furnace room from outside the building, and after a two months acquaintance with this duty no considerable part of that location escaped his knowledge.  In fact he says so.  He shows full and complete knowledge not only of the holes, but the special condition of each as to its covering.

Such an assumption of the risk of an employment by a servant will bar recovery independently of the principle of contributory negligence.  *Conley* v. *Am. Ex. Co.*, 87 Maine, p. 356.  If the servant comprehends the nature and degree of danger and voluntarily takes his chances, he must abide the consequences, whether he is fortunate or unfortunate in the result of his venture.  *Mundle* v. *Hill Mfg. Co.*, 86 Maine, pp. 405–6.  Business is sometimes

carried on in buildings or places obviously unsafe; and if, with a knowledge that a business thus conducted, the workman engages in it, he takes the risks which he must know are incident thereto. *Taylor* v. *Carew Mfg. Co.*, 140 Mass. 152. See case in point, *Carrigan* v. *Washburn & Moen Mfg. Co.*, 170 Mass. p. 79. See also *Leary* v. *B. & A. R. R.*, 139 Mass. p. 580; *Ciriack* v. *Merchants' Woolen Co.*, 146 Mass. 182; *Huddlestone* v. *Lowell Machine Shop*, 106 Mass. p. 286; *Buzzell* v. *Laconia Mfg. Co.*, 48 Maine, p. 113; *Wheeler* v. *Wason Mfg. Co.*, 135 Mass. p. 298; *Shanny* v. *Andros. Mills*, 66 Maine, p. 427; *DeForest* v. *Jewett*, 88 N. Y. p. 264.

The burden was upon the plaintiff to show affirmatively that this casualty occurred from the negligence of the defendant by reason of defects, or dangers, the location of which the plaintiff was ignorant and had no appreciable knowledge. This he failed to do. There is not a scintilla of evidence on his part, or his four witnesses, to show that any change had been made in the covering of the hole, into which he says he fell. So far as the affirmative testimony goes, the hole was then covered in the same way with one plank, as it had been for the three days previous. Therefore, if the plaintiff's evidence is to be believed, there was no question for the jury as to change of covering. There was but one covering and that was the same at the time of the accident as it had been from the first; and in this line for a perfect defense to this action we quote from the judge's charge, to which there is no exception: "And I said if there had been, and if there was a hole for one day, or two or three, in this condition, which he knew, and if it remained in the same condition that it had been up to the time of the accident, and he knew about it, and appreciated it, why he would assume the risk of the danger arising therefrom." And therefore on this point the jury had no evidence on which to base a verdict.

The injury occurred by want of due diligence and proper caution or care on his own part, knowing all the conditions under which he was acting. As was said by EMERY, J., in *Campbell* v. *Eveleth*, 83 Maine, p. 57: "It is also a reasonable and well estab-

lished principle that the employer may assume that his employee is not a senseless, mindless machine, but that he possesses and will use for the benefit of his employer as well as of himself, the ordinary senses, intelligence and understanding of one of his age."

The total want of evidence on the part of the plaintiff that the defendant was guilty of negligence in placing its foundations for the contemplated " economizer " and the absence of evidence that the plaintiff at the time of the accident was in the exercise of due care must be fatal to the plaintiff's action. *Cunningham* v. *Bath Iron Works*, 92 Maine, page 513.

The burden is on the party prosecuting to show that the person killed or injured did not by his own want of care contribute to the accident. *State* v. *Me. Cent. R. R. Co.*, 76 Maine, p. 357.

It is also said that sometimes the plaintiff's own evidence shows that he by his own carelessness did thus contribute, but that it is equally fatal if his evidence fails to show that he did not thus contribute. *McLane* v. *Perkins*, 92 Maine, p. 44; *Gleason* v. *Bremen*, 50 Maine, 252.

The court will not allow to the plaintiff the excuse that his attention was diverted by his duties. *Walker* v. *Lumber Co.*, 86 Maine, p. 191, where HASKELL, J., says: " He carelessly exposed himself to a danger of which he must have previously had notice, and, although his misfortune was great, others cannot be held to share it with him or bear it for him." *Wallace* v. *Cent. Vt. R. R. Co.*, 63 Hun, 632.

We submit that there was no evidence before the jury to prove that the accident resulted from the negligence of the defendant; neither was there any direct evidence that the plaintiff was in the exercise of due care and free from contributory negligence. The undisputed facts prove that he had assumed the risk of all the perils incident to his employment, and the weight and preponderance of the evidence was clear and unanswerable that the accident must have resulted from the plaintiff's heedlessness and want of proper and due vigilance. The verdict has no valid foundation and should be set aside.

SITTING: EMERY, HASKELL, WISWELL, STROUT, SAVAGE, FOGLER, JJ.

STROUT, J. Defendant had at its power-house five furnaces in a line, three of them burning coal and two saw-dust. Plaintiff was fireman, whose duty it was to "slice" or rake the fires in these furnaces. This was done with an iron bar ten feet, or more, in length. The furnaces were ten to twelve feet deep. It was necessary to do the slicing or raking rapidly, to prevent steam running down. The raking was begun at the back of the furnace, with the fire-box doors open. It was very hot in front when the doors were open. In raking, plaintiff stood facing the furnace. The raking of one furnace occupied about two minutes.

To obtain foundation for an "economizer", defendant had dug four holes, six feet square, more or less, and intended to be ten or twelve feet deep. Plaintiff, at the time of the accident, was "slicing" the fire in coal furnace number 3.

Directly in front of the fire-box, and eight to eleven feet from it was one of these holes, then dug to the depth of about two feet. It had been there about three days, and was partially covered with plank,—plaintiff says only one plank upon it. Hanson, superintendent of the excavations, says it was nearly all covered—that it had been covered all the time the hole was there. "I tried to keep these places covered all we could when we were working in them", and that it was covered at the time of the accident, when they were not working in it, "with a small opening". Sheldon, a witness for defendant, says that "the hole was partially covered", "a good part of it was covered"—that there was an "opening" or "hole large enough for his (plaintiff's) foot to go down through". Plaintiff says the opening was three feet or more.

In slicing, plaintiff stood facing the furnace and back to this hole. In doing his work it was necessary to step backward from the furnace to slice the fire to its front.

In doing so, he fell into the hole and was seriously and permanently injured. Plaintiff had previous knowledge of the existence of all the holes.

Plaintiff had a verdict, and the defendant asks that it be set aside as against law and evidence.

Digging the holes for foundation to the "economizer," was connected with and a part of the plant itself.    As to this, the master had the responsibility that the work should be done with due care, and made reasonably safe, and that responsibility continued so long as the means were used.    If any servant of defendant employed upon that work was negligent in leaving the excavation in an unsafe condition—such negligence was that of the master—the the doctrine as to negligence of fellow-servants does not apply. *Shanny* v. *Androscoggin Mills*, 66 Maine, 424; *B. & O. Railroad* v. *Baugh*, 149 U. S. 388.

The distance from furnace 3 to the hole is placed by one witness at eight feet, by another at nine, and by another at eleven—the longest given by any witness.  Regarding the furnace as ten to twelve feet deep, and the method of slicing requiring it to begin at the back of the furnace and the bar then to be drawn forward to the mouth, the operator in the meantime standing face to the furnace and his back to the hole, and taking into account that from the heat when the doors were open he could not approach within one or two feet of it, it is obvious that in his backward steps he would probably, almost inevitably, pass upon or over a portion of this hole.    Whether at the time it had one or more planks over it, the fact that he fell into it is conclusive that there was an opening in the covering sufficient to permit a fall into it.

Was it negligent in defendant to leave such opening, under the conditions existing?    The jury have said it was, and we are not disposed to differ from the jury in that finding.

But, it is said that plaintiff assumed the risk.    He knew the hole was there, but it does not appear that he knew before the accident, that it was partially uncovered.

He testified that it had but one plank over it, from examination after the accident, but he does not state that he knew that condition before he fell into it.    In the fall or extrication of plaintiff, the planking was likely to be disturbed or partly removed.

It is well settled, that the servant assumes the ordinary and

apparent risks of his employment; but, as is said in *Shanny* v. *Androscoggin Mills*, supra, "under his contract for service he assumes such risks only as are incident to his employment. These risks include the use, not the purchase, of the machinery." Here plaintiff assumed the risk from the operation of the works, under his contract of employment—but not the risk from defects in the plant itself, which defendants were bound to make and keep reasonably safe. *Coolbroth* v. *Maine Central Railroad*, 77 Maine, 165. That duty cannot be escaped by delegating the work to a servant.

If such servant in attempting to discharge the master's duty is negligent it is imputed to the master as his negligence. *Donnelly* v. *Booth Brothers*, 90 Maine, 110.

The plaintiff, under his general employment, did not assume the risk arising from inattention or negligence of the master in regard to these holes. In determining the question of the liability of defendant upon the facts in this case, the familiar doctrine as to negligence of fellow-servants, and assumption of the risks of the employment by the servant are eliminated, as inapplicable.

If the defendant was guilty of negligence in not sufficiently covering this hole, it became liable to compensate the plaintiff for his injury, if he was in the exercise of due care at the time, and no negligence of his contributed to it. It is true, that if a known and appreciated peril exists, though resulting from the fault of the master, and the servant continues in the employment exposed to the danger, and receives an injury therefrom, he cannot recover from the master. In a sense, in such case, he may be said to assume the peril, not as incident to his employment, but as a voluntary undertaking at his own risk, to do the work, subject to such peril. He deliberately takes the chances upon himself to the exoneration of the master.

But, as was said in *Kane* v. *Northern Central Railway*, 128 U. S. 95, "in determining whether an employee has recklessly exposed himself to peril, or failed to exercise the care for his personal safety that might reasonably be expected, regard must always be had to the exigencies of his position, indeed to all the circumstances of the particular occasion." In that case, a brakeman on a freight train

knew that one of the steps of a car was missing, and while it was held that he should not have forgotten this fact, yet, as his duty and the safety of the train required him to pass over the cars " to reach his post at the earliest practicable moment," it was a question for the jury to determine whether, under the particular circumstances, he was in the exercise of due care when injured in consequence of the missing step, notwithstanding his forgetfulness of its absence at the time.

So here, while defendant may well be chargeable with negligence in not sufficiently covering the hole, considering its proximity to the furnace where plaintiff was at work, and the method and exigencies of that work, it was peculiarly a question for the jury, whether he acted recklessly, regardless of his safety, or whether he exercised that degree of care reasonably to be expected in that situation and under all the circumstances.

It must not be forgotten that, if the defendant's witnesses are to be believed, the hole was not only intended to be covered, but that it was in fact nearly covered, and may have presented, and probably did, an appearance of safety to casual observation,—but being in fact unsafe, while it invited the confidence of the servant,—it operated as a trap to his feet. It was really more dangerous if wholly uncovered, as, in that case, the peril would have been obvious and the servant put upon his guard. He relied, as he had a right to rely, upon the presumption that defendant had discharged its duty, until its neglect became obvious, and was not bound to make a critical examination when its general appearance was that of safety. *Fox* v. *Sackett*, 10 Allen, 586.

If the jury found, as the evidence justified, if it did not require them to find, that the hole was covered except a small opening sufficient to allow plaintiff's foot to pass through, they might well find also that the covering presented a general appearance of safety, and was not suggestive of peril; and that plaintiff was justified in relying upon it, and was not wanting in due care. Where the evidence is such that different minds may reach opposite conclusions upon the question of reasonable and proper care, it is always submitted to the jury to determine that question, and their

conclusion ought to control. The fact that a person voluntarily takes some risk is not conclusive evidence, under all circumstances, that he is not using due care. Nor is knowledge of a danger, not fully appreciated, conclusive that the risk is his. *Lawless* v. *Connecticut River Railroad*, 136 Mass. 1; *Taylor* v. *Carew Manufacturing Co.*, 140 Mass. 153; *Lyman* v. *Hampshire*, 140 Mass. 313; *Carey* v. *Arlington Mills*, 148 Mass. 342; *Mundle* v. *Hill Manufacturing Co.*, 86 Maine, 405; *Campbell* v. *Eveleth*, 83 Maine, 55.

The case was submitted to the jury upon a charge, to which no exception is taken, which fully and very clearly presented the relative rights, duties, liabilities and responsibilities which the law imposes upon the relation of master and servant. The questions involved were those of fact, within the province of the jury to determine. The verdict of that tribunal is entitled to respect, and should not be disturbed unless it is so clearly wrong as to compel the conclusion that it was the result of prejudice, or failure to comprehend the facts and the legitimate inferences therefrom, or is antagonized by some controlling rule of law.

It is not for the court to substitute its judgment for that of the jury. The facts have been found by the constitutional tribunal in favor of the plaintiff, and we cannot say that the evidence did not justify the finding. The rules of law applicable are not inconsistent with the verdict. *Campbell* v. *Eveleth*, supra.

*Motion overruled.*