GUY A. MELANSON

*vs.*

REED BROS., INC.

Androscoggin.    Opinion, November 18, 1950.

*John A. Platz*, for plaintiff.

*Hutchinson, Pierce, Atwood & Scribner*, for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

MERRILL, J. On exceptions to the acceptance of a Referee's Report. The case was heard by a referee under rule of court with right of exceptions as to questions of law reserved. The referee reported in favor of the plaintiff. Written objections were made to acceptance of the referee's report. The objections were overruled, the report accepted, and exceptions filed and allowed. It is upon these exceptions that the case is now before this court.

The facts of this case are simple. The plaintiff was the servant of the defendant. The defendant was engaged in the growing and marketing of potatoes upon an extensive scale. At the time of the plaintiff's employment the defendant was engaged in digging its crop from several large fields by means of potato diggers drawn and operated by tractors. The referee found that the plaintiff and one Walker were employed to load potatoes from the field into a truck, counting the number of barrels, keep the field spaced for the pickers and help about the tractor and digger if it should break down. He further found that they informed the defendant of their unfamiliarity with the machinery being used. The plaintiff and Walker went to work in a field where one Wallace Higgins, together with a man by the name of George Glew, were operating the digger and tractor, Higgins being the operator of the digger and Glew being the operator of the tractor. The tractor furnished the power not only for drawing the digger over the ground but in addition, by means of a power takeoff, operated the mechanism of the digger. This power takeoff was a square shaft about six inches in diameter extending from the tractor to the digger. It was located two and one-half to three feet above the ground. Ordinarily when in operation this power takeoff was covered with a guard. When in operation the power takeoff revolved within the guard. At the time of the accident the guard had been removed for the

purpose of greasing the power takeoff. The plaintiff and Walker had been at work about nine days. After lunch on the ninth day, Mr. Higgins, the digger operator in their field, called them to where the digger and tractor were standing and set Walker to work greasing the digger. Higgins asked the plaintiff to get him a wrench which lay upon the ground in front of the plow of the digger, and between the digger and tractor. At that time the engine of the tractor was in operation. The power takeoff was not in operation, being disengaged. The tractor operator, Glew, had the physical control of the clutch which engaged and disengaged the power takeoff. It was his duty to start and stop the power takeoff at the direction of Higgins. In stooping to pick up the wrench, the plaintiff placed his hand upon the idle power takeoff. While his hand was there the power takeoff commenced to revolve. It caught the glove on the plaintiff's left hand and tore off his left thumb.

In his report the referee states:

> "The Referee finds that Wallace Higgins, whose duty it was, as operator of the digger, to warn the plaintiff of the hidden danger incident to contact with the power takeoff and which danger was unknown to the plaintiff, failed to do so."

It is upon this breach of duty that the referee grounds liability on the part of the defendant. By appropriate objection and exception the defendant has challenged the above finding of the referee, which finding is determinative of the plaintiff's right to recover. Unless there was a duty upon the part of the defendant to warn the plaintiff of the danger of contact with the power takeoff, which contact was the cause of the plaintiff's injury, the report of the referee cannot be sustained.

If there be any credible evidence from which the referee could find that the defendant owed the plaintiff the duty to warn him of the danger of coming in contact with the power takeoff when he attempted to pick up the wrench the ob-

jection and exception to the finding must be overruled. *Staples* v. *Littlefield,* 132 Me. 91; *Edwards* v. *Hall,* 141 Me. 239.

One of the many duties that a master owes to his servant is that of warning the servant of *hidden* dangers that he may encounter in the course of his employment. It is to be noted that the duty is to warn of *hidden* as distinguished from *obvious* dangers. However, the duty to warn even of hidden dangers is not universal in its application. Before there is a duty upon the master to warn of a hidden danger the danger must be known to the master, or in the absence of actual knowledge thereof, it must be a danger, the existence of which he, by the exercise of due care on his part, should have known. Furthermore, it must be a danger which is unknown to the servant and which would not be known and appreciated by him if in the exercise of due care. In *Wormell* v. *Railroad Co.,* 79 Me. 397, 405, a leading case in this jurisdiction, we said:

> "Moreover, the law implies that where there are special risks is an employment of which the servant is not cognizant, or which are not patent in the work, it is the duty of the master to notify him of such risks; and on failure of such notice, if the servant, being in the exercise of due care himself, receives injury by exposure to such risks, he is entitled to recover from the master whenever the master knew or ought to have known of such risks. It is unquestionably the duty of the master to communicate a danger of which he has knowledge and the servant has not. But there are corresponding duties on the part of the servant; and it is held that the master is not liable to a servant who is capable of contracting for himself, and knows the danger attending the business in the manner in which it is conducted, for an injury resulting therefrom. *Lovejoy* v. *Boston & Lowell Railroad,* 125 Mass. 82; *Ladd* v. *New Bedford R. R. Co. supra; Priestley* v. *Fowler, supra.* It is his duty to use ordinary care to avoid injuries to himself. He

is under as great obligation to provide for his own safety, from such dangers as are known to him, or discoverable by the exercise of ordinary care on his part, as the master is to provide it for him."

In *Hume* v. *Power Company*, 106 Me. 78, 82 we said:

"And, moreover, the law implies that the discharge of this duty requires the master to notify his servant of any and all special risks and dangers of the employment, and of all dangerous conditions attendant upon the place of the exercise of the employment, of which the master has knowledge, or by the exercise of reasonable care would have knowledge, and which are unknown to the servant and would not be known and appreciated by him if in the exercise of reasonable care on his part.

This duty thus imposed upon the master is personal. The servant has the right to look to him for the discharge of it. If, instead of discharging it himself, the master employs some other person to do it for him, then such other person stands in the place of the master, and becomes a substitute for him—a vice-principal—in respect to the discharge of that duty, and the master then becomes liable for the acts and the negligence of such other person in the premises to the same extent as if he had performed those acts and was guilty of the negligence personally."

To multiply authorities upon these fundamental principles of the law of master and servant would serve no useful purpose. From the foregoing principles of the law it is seen that the duty to warn is a personal, that is, a nondelegable duty resting upon the master. If he delegates that duty to another, with respect to that duty such other person is a vice-principal, that is, he stands in the place of the master and his failure to perform the duty is at law deemed the failure of the master.

As a necessary corollary of the foregoing rules it is a self evident truth that the duty to warn resting upon the

vice-principal, as the alter ego of the master, is only co-extensive with that resting upon the master. Unless the master under the same circumstances, with the same knowledge or means of knowledge as that of the vice-principal, coupled with his own knowledge and means of knowledge as to the hidden danger, would be under the duty to warn of the particular hidden danger to be encountered by the servant, no duty rests upon the vice-principal to warn the servant thereof.

While the referee in the above finding set forth herein has found that Wallace Higgins when he directed the plaintiff to pick up the wrench owed the plaintiff the specific duty to warn him of the danger of coming in contact with the power takeoff, such finding as a basis of liability could only be justified upon the theory that Wallace Higgins was a vice-principal and that he failed to discharge the duty resting upon the defendant to warn the plaintiff of the danger.

The defendant has by written objections and exceptions raised the questions of whether or not there is any evidence from which it could be found that Wallace Higgins was a vice-principal, or whether the picking up of the wrench was within the scope of the plaintiff's employment, or whether Higgins was authorized to direct the plaintiff to pick up the wrench. Important as the decision of these questions might be in certain aspects of the case, in view of the ground upon which we base our decision, none of them need be discussed or decided.

Unless the defendant if personally present and giving the order would under all of the existing circumstances be under the duty to warn the plaintiff of the danger of coming in contact with the power takeoff, Higgins, even if a vice-principal, would not be under the duty to give such warning.

Was there any credible evidence in this record that when Wallace Higgins directed the plaintiff to perform the simple act of picking up a wrench which lay between the digger and tractor that he, (assuming him to have been a vice-principal, a question upon which we neither express nor intimate an opinion) either knew or ought to have known that in so doing the plaintiff would be exposed to danger from coming in contact with the power takeoff, and that that danger was one of which the plaintiff neither knew nor ought to have known? Unless there be credible evidence from which these factors can be found there was no duty upon Higgins as vice-principal, the alter ego of the master, to give the plaintiff warning thereof, and a contrary finding would constitute error in law and require that the defendant's exceptions be sustained.

In determining whether or not there is any credible evidence in a record from which a certain conclusion may be drawn, a court is not precluded from bringing to bear and applying to the problem that sound common sense which is derived from living in a world populated by human beings, and the observation and knowledge of their actions and reactions in and to situations encountered in the ordinary conduct of human affairs. "Judges are not necessarily ignorant in court of what everybody else, and they themselves out of court, are familiar with; and there is no reason why they should pretend to be more ignorant than the rest of mankind." *Affiliated Enterprises* v. *Waller*, 5 Atl. (2nd), (Del.) 257, 261. This principle is as applicable to justices of the Law Court as it is to justices at *nisi prius*. It is also applicable to referees. It not only may, but should be applied in determining what conclusions should be drawn from existing facts.

While in this case the referee has found that the plaintiff was actually ignorant of the danger of coming in contact with the power takeoff, he evidently must have overlooked the fact that if he ought to have known of such danger

there was no duty to warn him thereof. If he should have known it he assumed the risk. If he assumed the risk there was no duty to warn. It must be remembered that assumption of risk is not necessarily contributory negligence. One may be in the exercise of the highest degree of care and yet not be able to recover if he is injured by a danger of which he either knew or ought to have known. It may be as the referee found that it was not negligence on the part of the plaintiff to have placed his hand on the idle takeoff which he did not know would move (a question upon which we need neither express nor intimate an opinion), but it by no means follows that it was such a danger that warning thereof should have been given.

> "The duty which the law imposes upon an employer who engages employees to do work of a dangerous character or in a dangerous place, to warn and instruct employees concerning such dangers, does not compel the employer to guard against injuries which a reasonable and prudent man would not expect to happen, or to warn his employees of dangers not reasonably to be anticipated. His responsibility for injuries asserted to have been caused by a breach of duty in this regard is determined by whether the calamity is one that should have been foreseen by a reasonably prudent person—that is, whether the peril is such as should reasonably have been anticipated. The employer is not to be held responsible because he failed to foresee and give warning of remote, improbable, and exceptional occurrences. Not only must the danger of an employment, in order to create a duty of warning and instruction, be one which is unknown to the employee, but it also must be one which is known to the employer or might be known to him by the exercise of reasonable vigilance." 35 Am. Jur. 581, Sec. 149.

To hold, on this record, that Wallace Higgins should have foreseen, that in picking up the wrench the plaintiff would place his hand on the then idle and harmless power takeoff,

and that he should have further foreseen that while the plaintiff was so engaged the machine would be started by Glew, a fellow servant of the plaintiff and that Higgins should have given the plaintiff a warning of the danger of coming in contact with the power takeoff, would entirely disregard how the ordinarily prudent person, that is the person of ordinary prudence, or the reasonably careful person, that is the person who exercises reasonable care, acts under such circumstances. Foresight not hindsight is the test to be applied in determining how the reasonably prudent person will act in a given situation. As stated in the excerpt from American Jurisprudence, *supra*, the responsibility of the master for a breach of the duty to warn of danger "is determined by whether the calamity is one that should have been foreseen by a reasonably prudent person—that is, whether the peril is such as should reasonably have been anticipated. The employer is not to be held responsible because he failed to foresee and give warning of remote, improbable and exceptional occurrences."

There was no danger to the plaintiff in coming in contact with the power takeoff while idle. It was idle when he was directed to pick up the wrench and when he placed his hand upon it. There is no evidence that Glew engaged the clutch at the direction of Higgins. Nor was Higgins bound to anticipate that it would be set in motion without his direction to the operator of the tractor, Glew, a fellow servant of the plaintiff. As said in Labatt on Master and Servant, Vol. 1, Page 527:

> "Nor is he guilty of negligence in failing to warn a servant of a special danger which could not have arisen without negligence on the part of the plaintiff's fellow servants."

Applying the foregoing standards and tests to the facts of this case, common sense and common knowledge of everyday human affairs require that we hold there was no credible evidence in the record from which the referee

could have found that it was the duty of Wallace Higgins, when he gave the direction to the plaintiff to pick up the wrench, to warn him of the danger of coming in contact with the power takeoff. Absent such duty the plaintiff is not entitled to recover, there is no need to either discuss or rule upon the other exceptions. Exceptions to the overruling of the fourth objection being sustained the entry should be:

*Exceptions sustained.*