Frank **HARRIS**, Plaintiff,

v.

**HERCULES INCORPORATED**, Defendant,

v.

**Ray HARRIS d/b/a Harris Erection Service**, Third-Party Defendant,

The Travelers Insurance Company, Intervenor.

**No. LR-70-C-39.**

United States District Court, E. D. Arkansas, W. D.

May 20, 1971.

Gerland P. Patten, Patten & Brown, Little Rock, Ark., for plaintiff.

Harlan A. Weber, Terral, Rawlings, Matthews & Purtle, Little Rock, Ark., for Travelers Ins. Co.

Alston Jennings, Wright, Lindsey & Jennings, Little Rock, Ark., for Hercules Inc.

Austin McCaskill, Barber, Henry, Thurman, McCaskill & Amsler, Little Rock, Ark., for Ray Harris.

## MEMORANDUM OPINION

EISELE, District Judge.

This is an action by plaintiff, Frank Harris, to recover for personal injuries sustained when the boom of a crane came into contact with, or close enough to, an uninsulated high-voltage line so as to energize a cable attached to the crane which was then being handled by the plaintiff. At the time, he was working for the Harris Erection Service, an independent contractor, on the premises of the contractee, the defendant Hercules, Inc.

The case was submitted on interrogatories. The jury found that the defendant, Hercules, was 85% negligent; that the plaintiff was 15% negligent; that the plaintiff assumed the risk; and that the plaintiff was damaged in the amount of $90,000.00. Judgment has not been entered. The plaintiff has moved to set aside the verdict and, in the alternative, for a new trial based upon two grounds: (1) that the jury's answer to the assumption of risk interrogatory was the result of a misunderstanding and did not represent its true intentions, and (2) that under the law of Arkansas the assumption of risk defense was not applicable and should not have been submitted to the jury, or, if applicable, should not operate as a complete defense.

There is nothing to support plaintiff's contention that the jury misunderstood, or necessarily answered incorrectly, the interrogatory concerning assumption of risk. The Court inquired of the jurors whether the answers to all of the interrogatories represented their unanimous verdicts and was assured that they did. Neither party desired to have the jury polled.

The understanding and intent of the jurors as to the *effect* of their answers is immaterial.[1] Thedorf v. Lipsey, 237 F.2d 190 (7th Cir. 1956); Ward v. Cochran, 71 F. 127 (8th Cir. 1895). The jury answered the interrogatory concerning the assumption of risk defense "yes". And there is substantial evidence to support this finding.

The plaintiff's second contention concerning the applicability of the doctrine of assumption of risk is a much more

---

1. In candor the Court states that the jury probably did not know, or intend, that their finding on the assumption of risk defense would constitute a complete bar to the plaintiff's action. For the purposes of this opinion it is assumed that, if a hearing were permitted on this issue, it would result in the conclusion that the jury believed, and intended, that their verdict would result in a judgment in favor of the plaintiff for $90,000.00 reduced by 15% as in the ordinary comparative negligence case.

difficult question. It will be helpful at this point to briefly state the facts.

The plaintiff, Frank Harris, is an ironworker with a great deal of experience in the erection field, having been employed from time to time by several local contractors, including his brother, Ray Harris, doing business as the Harris Erection Service.

On or about July 23, 1966, the defendant, Hercules, Inc., contracted with Harris Erection Service to perform certain work at their herbicide and pesticide plant in Jacksonville, Arkansas. The job consisted of removing an eroded liquid tank and replacing it with another. The work involved the use of a crane. Ray Harris employed the plaintiff as a "rigger" to make the necessary attachments to the tank to be removed. To perform the work, the crane was placed in close proximity to an uninsulated energized power line. After removing the eroded tank and replacing it with another one, Ray Harris was requested to erect steel columns on concrete foundations, said columns to constitute the structure to support another tank. This work was also done directly under the uninsulated high voltage lines. It was during the process of performing this latter work that the plaintiff was injured. The plaintiff contends that Hercules was negligent in failing to cause the power lines to be de-energized during the performance of the work, i. e., in failing to provide plaintiff a safe place to work. Carroll v. Lanza, D.C., 116 F.

Supp. 491 (1953); Barrett v. Foster Grant Co., D.C., 321 F.Supp. 784 (1970).

At the close of the plaintiff's case and again at the close of all of the evidence, the defendant moved for a directed verdict on the ground that, as a matter of law, the plaintiff assumed the risk of his injury and was, therefore, barred from any recovery. The Court denied the motion, and submitted the issue of assumption of risk to the jury over plaintiff's objection. There was no objection to the form of the assumption of risk instruction.[2]

The plaintiff argues in its motions that the doctrine of assumption of risk should have no applicability to this case and that that issue should not, therefore, have been submitted to the jury. In the alternative, plaintiff argues that, if the doctrine is applicable, it should not be interpreted to operate as a complete defense and bar.

■ In Arkansas, the assumption of risk defense applies not only in master and servant cases but also in ordinary cases of negligence. See Bugh v. Webb, 231 Ark. 27, 328 S.W.2d 379 (1959). Efforts to restrict its application have not been too successful.

■ Judge Miller, in Carroll v. Lanza, 116 F.Supp. 491, 506 (W.D.Ark. 1953), set forth the Arkansas law pertaining to the doctrine of assumption of risk:

"The doctrine of assumed risk is based upon voluntary exposure to a

---

2. That instruction is as follows:

"Hercules Incorporated contends that Frank Harris assumed the risk of his own injuries and damages. To establish that defense Hercules Incorporated has the burden of proving each of the following propositions:

"First: That a dangerous situation existed which was inconsistent with the safety of Frank Harris;

"Second: That Frank Harris knew the dangerous situation existed and appreciated the danger;

"Third: That Frank Harris voluntarily exposed himself to the dangerous situation which proximately caused his injuries and damages.

"If you find that all of these propositions have been proved by a preponderance of the evidence, then your verdict should be for Hercules Incorporated.

"If, on the other hand, you find that any one of these propositions has not been proved by a preponderance of the evidence, the defense of assumption of risk would fail.

"However, the Court tells you that Frank Harris had the right to assume that Hercules Incorporated would furnish him a reasonably safe place to work."

known danger. \* \* \* The defense of assumed risk will be applied in cases fairly within the rule, but it is not a favored doctrine, being artificial and harsh, and should not be extended beyond its reasonable limits. \* \* \*

"Even though an employee knows of his master's negligence, nevertheless he does not assume the risk of the increased hazard unless he actually realizes the danger to which he is exposed. \* \* \* In other words, an appreciation of the danger is a prerequisite to the application of the doctrine."

It was the contention of the defendant in Carroll v. Lanza that the doctrine of assumption of risk applied in an action by an employee of a subcontractor against the general contractor. Judge Miller had this to say:

"There is some doubt as to whether the doctrine of assumption of risk applies between a general contractor and the employees of his subcontractor. However, the Arkansas Supreme Court has applied the doctrine in actions by employees of shippers against railroad companies for injuries sustained while unloading box cars, owned by said railroad companies, as a result of the unsafe condition of the box cars. \* \* \* And, the Court is of the opinion that the Arkansas Supreme Court would likewise apply the doctrine in the case of an action by an employee of a subcontractor against the general contractor."

The Court concurs with Judge Miller and, reluctantly, concludes that the Supreme Court would likewise apply the doctrine in the case of an action by an employee of an independent contractor against the contractee since the relationship is essentially the same.

■ In this case there was ample evidence to support the submission of the issue of assumed risk to the jury. The

evidence is relatively uncontradicted that the uninsulated power line presented an open and obvious danger to the plaintiff and that the plaintiff recognized and appreciated said danger. In the Court's opinion, however, there was some doubt as to the "voluntariness" of the plaintiff's assuming the risk. The issue was therefore submitted to the jury.

In Chicago, R. I. & Pac. Ry. v. Lewis, 103 Ark. 99, 104, 145 S.W. 898, 900 (1912), the Court said:

"The doctrine of assumed risks \* \* \* is based entirely upon voluntary exposure to a known danger, and can only be applied in cases where the person may reasonably elect whether or not he shall expose himself to it. The exposure may be without physical coercion, yet the circumstances may be such as would render it unreasonable for a person to exercise his election not to proceed in that way."

That Court further stated, in substance, that it was unreasonable to expect a person unloading a box car to elect to stop the work or to proceed piecemeal after becoming conscious of the danger, unless the danger was so obvious that it was negligence to proceed, and that it could therefore be said that self-exposure was voluntary in the sense that the plaintiff had assumed the risk.[3] In this case, there was sufficient evidence to submit that issue to the jury.

■ This brings the Court to the plaintiff's final contention that the doctrine of assumption of risk should not be a complete bar to recovery in this case. The plaintiff argues that, with the adoption of the comparative negligence statute, Arkansas should no longer recognize the doctrine of assumption of risk as a complete bar to recovery, and that such a doctrine is inconsistent with the philosophy supporting comparative negligence statutes. The Court is im-

---

3. It should be noted that in Chicago, R. I. & Pac. Ry. v. Lewis, the Court made the distinction between an election prior to the commencement of the work and an election subsequent thereto. In *Chicago*, the hazardous situation was not discovered until after the plaintiff had proceeded with the work, whereas here, the hazard was discovered by the plaintiff prior to the commencement of the work.

pressed with plaintiff's argument and agrees that the doctrine of assumption of risk as a complete bar, is inconsistent with the philosophy behind comparative negligence statutes. However, this Court is bound in this instance to apply the law of the state of Arkansas. We find no case where the Arkansas Supreme Court has applied the assumption of risk doctrine "comparatively" or otherwise than as a complete bar where applicable. It is true that that court may never have been specifically urged to so modify the assumption of risk doctrine and that it might change its attitude in the future. But this can not help the plaintiff here.

Plaintiff argues that Arkansas recognizes some exceptions to the general rule that the doctrine is a complete bar, and cites J. Paul Smith Co. v. Tipton, 237 Ark. 486, 374 S.W.2d 176 (1964), and Hass v. Kessell, 245 Ark. 361, 432 S.W. 2d 842 (1968), in support of his argument. Both of these cases involve automobile accidents in which the guest-passenger of one car brought an action against the driver of the other car. In both cases the jury found that the guest-passenger had "assumed the risk" of the hazards of riding with the host-driver. This defense would, therefore, be available *to the host-driver*, if sued by his passenger, as an absolute bar.[4]

In the Court's opinion, *Smith* and *Hass* stand for the proposition that a guest-passenger's "assumption of the risk" of riding with a particular host does not bar his recovery against the driver of another car. In fact, the majority in *Hass* stated that the doctrine of assumption of risk had nothing to do with an action by a guest-passenger against the driver of another vehicle. If, however, a guest passenger also assumes the risk of damage due to the negligence of the driver of the *other* vehicle, as for example where two carloads of youngsters are voluntarily engaged in some variation of the "chicken" game, then the guest would be completely barred from recovering against the third party driver also. Here the plaintiff may have assumed the risk of the negligence of his employer, the crane operator, but, as found by the jury, he also assumed the risk of harm created by the negligence of the defendant, Hercules.

The application of the doctrine of assumption of risk in cases such as the one here before the Court seems harsh and unfair, particularly when applied to a working man, performing the duties of his job, who has so little real choice over his working conditions. Even though he be thoroughly aware of the hazards, he is not likely to risk the forfeiture of his job by refusing to work under such conditions. How voluntary is his decision to assume the risk? And yet, pursued logically, a rule to the contrary would do away with the assumption of risk defense to all working men carrying out their duties. Possibly an excellent result but clearly not the law of Arkansas.

At most the "assumption of risk" in cases such as this should be treated simply as another element of contributory

---

4. In the *Tipton* case the guest passenger sued both the driver of the other vehicle and one Woolsey, his host-driver. The jury found that the plaintiff assumed the risk of Woolsey's negligence and no judgment was entered against Woolsey even though the jury found him to be 20% negligent. The comment of the Court in the *Tipton* case, and in the majority opinion's analysis of Tipton in the *Hass* case, to the effect that the plaintiffs seemed to have "waived their right of judgment against Woolsey" might lead one to infer that the Court concluded, or assumed, that the jury's finding of assumption of risk did *not* bar a recovery against Woolsey. But such an inference is not justified in the light of the other language in the two cases, the facts, the actual disposition of the claim against Woolsey, and the other opinions of the Supreme Court, including Bugh v. Webb, supra, which is cited in *Tipton*. The confusion found in these cases is the natural result of permitting the utilization of the assumption of risk doctrine to be extended to areas where it should have no applicability, adding, as it does, nothing to a straightforward analysis in terms of negligence and contributory negligence— nothing, that is, except confusion and anomalous results.

negligence and handled under the comparative negligence statute as such. But that is not the law in Arkansas today.

Accordingly, plaintiff's motions to set aside the verdict and for a new trial must be overruled. Judgment for the defendant will be entered in accordance with the verdict of the jury.