**Raymond E. WILSON**

**v.**

**Peter GORDON and Peter Gordon, d/b/a Gordon's Oil Service.**

Supreme Judicial Court of Maine.

March 31, 1976.

Bennett, Kelly & Zimmerman, P. A., by Peter J. DeTroy III, John N. Kelly, Barry Zimmerman, Portland, for plaintiff.

Perkins, Thompson, Hinckley, Thaxter & Keddy, by Owen W. Wells, Thomas Schulten, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, and ARCHIBALD, JJ.

POMEROY, Justice.

The appeal now before us is from the denial of defendant's motion for a directed verdict made under the provisions of Rule 50(a), M.R.Civ.P.; from the denial of judgment n. o. v., Rule 50(b), M.R.Civ.P.; and from the denial of a motion for a new trial.

We deny the appeal.

■ In reviewing the rulings of the Justice below on the motions presented, we accept the version of the facts most favorable to the appellee. *Miller v. Liberty Ins. Co.*, 161 Me. 438, 213 A.2d 831 (1965). Viewed in that light the following facts emerge: The appellee was employed by appellant as an oil burner repairman.[1]

On the morning of April 28, 1971, appellant Gordon supplied appellee with a list of customers whose oil burners required servicing that day. Knowing that one of the customers, John Troy, was a summer resident and thus would not be home on that day, appellee inquired of appellant Gordon as to how he was to gain access to the Troy cellar. Appellee was instructed to

". . . go in the driveway and to a door on the side of the barn door which is a shed door. And turn right and there would be a wooden window hasped there. To take that out.

\* \* \* \* \*

"He told me to go in through this window. Service the burner and come back out through this same window."

Appellee entered the cellar as instructed, serviced the Troy's oil burner, and prepared to leave through the open window. He set his tools outside the window and attempted to jump up onto the window ledge. In so doing, however, he struck his head on a beam above the window and was injured.

[1]. It is agreed that the provisions of the Workmen's Compensation Act, 39 M.R.S.A., have no application to the incident from which this action arose.

Appellant contends the court's rulings were in error because:

"I. An employer is not under a duty of care to warn his employee of hazards unless the employer has superior knowledge of the hazards or they were reasonably foreseeable to him.

"II. An employer is not bound to provide safe working premises or safe access to working premises when the premises or access thereto are not in the employer's control.

"III. An employee is not entitled to recover against his employer if he is injured from a hazard which is ordinarily and normally incident to his work and he has contractually assumed the risk of the hazard nor is he entitled to recover for a hazard which is not so incident if he knows and appreciates the risk and voluntarily assumes the risk of the hazard.

"IV. The doctrine of assumption of the risk has not become inapplicable by legislative enactment of the comparative negligence law."

He also alleges the verdict of the jury is "contrary to the clear weight of the evidence."

■ Appellant concedes that as a general rule an employer has a duty to warn his employees of dangerous working conditions, but he urges that the rule is not absolute. No duty arises, he says, where the dangers are or should be obvious to the employee or where the employer cannot be said to have "superior knowledge" of the hazard of which appellee complains. *Wyman v. Berry*, 106 Me. 43, 75 A. 123 (1909), and *Melanson v. Reed Bros.*, 146 Me. 16, 76 A.2d 853 (1950), are cited as authority for the position appellant takes.

■ Appellant argues that on the facts of this case the dangerous condition involved was not hidden, and if anyone had

superior knowledge of the condition it was the plaintiff who had entered through the window in question approximately an hour before the accident. Thus, he says, there arose no duty to warn in this case, and, *a fortiori*, there could be no breach of that duty.

We answer this by pointing out that at no time was the jury instructed that failure to warn of the hazard was a basis on which the appellee predicated his claim of fault on the part of the appellant. The jury verdict could not have been premised on a finding with respect to any such claim.

Appellant's second contention is that there is no duty on the part of the employer to exercise reasonable care to provide the employee with a reasonably safe place to work when, as here, the place of work and the means of access to it and egress from it are the premises of a third party and not within the immediate control of the employer.

The evidence in this case was that the employer had always made arrangements for the servicing of the oil burner directly with the owner of the premises; that always before this occasion he had arranged for the employee to enter the premises through a door by use of a key which had been made available by the owner of the building.[2] In this case, however, the arrangement which was made was to enter the premises by means of a cellar window. Instructions to this effect were specifically given by appellant to appellee.

■ Even though the employer had no direct control of the premises, he was under a legal duty to exercise reasonable care to arrange with the owner of the premises for a reasonably safe means of entrance to the premises and exit from the premises by the employee. It was proper for the jury to conclude that the employer had not exercised reasonable care in mak-

---

2. There was conflicting evidence on this point.

ing an arrangement with Mr. Troy for the employee to enter the premises by a reasonably safe method. The jury could likewise conclude the employee was given specific instructions by the employer to use this window as the means by which he could go to the furnace and effect the repairs thereon. The jury's finding that there had been a breach of the duty to exercise reasonable care in providing the employee with a reasonably safe method of entering into and leaving the premises cannot be said to be without support in the evidence. See *Carson v. Dierks Lumber & Coal Co.*, 196 Ark. 163, 117 S.W.2d 39 (1938); *Colonna Shipyard v. Bland*, 150 Va. 349, 142 S.E. 729 (1928); *Gregoric v. Percy–LaSalle Mining & Power Co.*, 52 Colo. 495, 122 P. 785 (1912).

The denial of the motion for a directed verdict and the motion for judgment n. o. v. was therefore proper.

Appellant next complains that the trial Justice failed to instruct the jury on "assumption of the risk." Appellant says there was ample evidence from which the jury might have concluded that appellee had assumed the risk of injury. If the jury had drawn this conclusion, appellant says, a verdict in favor of appellee would not have been legally possible.

The doctrine of assumption of the risk, long applied in Maine [*Boober v. Bicknell*, 135 Me. 153, 191 A. 275 (1937); *Frye v.*

*Bath Gas & Electric Co.*, 94 Me. 17, 46 A. 804 (1900)], appears to apply principally to cases involving master-servant relationships.[3]

Our Court has recognized two types of assumption of the risk in cases involving the employment relationship. These are what are referred to as contractual assumption of the risk and voluntary assumption of the risk. *Morey v. Maine Cent. R. R. Co.*, 125 Me. 272, 133 A. 92 (1926); *Hatch v. Portland Terminal Co.*, 125 Me. 96, 131 A. 5 (1925).

In *Morey*, supra, contractual assumption of the risk was defined as follows:

"*Dangerous work must be performed; and work must be done in dangerous places; and when a workman makes a contract to do such work, or to work in a dangerous place, he contracts with reference to that danger and assumes the* 'open and obvious risks incident to the work,' *or, as sometimes expressed,* 'such dangers as are normally and necessarily incident to the occupation.' *This is a contractual assumption of risk.*" 125 Me. at 274, 133 A. at 93.[4]

Contractual assumption of the risk is not inconsistent with the Maine comparative negligence statute.[5] On the other hand, voluntary assumption of the risk, as that term is defined in *Hatch v. Portland Terminal Co.*, supra,[6] is but a form of contributory fault. That being so,

3. *Corbett v. Curtis*, Me., 225 A.2d 402 (1967), appears to be the only case in which this Court has dealt with "*assumption of the risk*" without the framework of a master-servant relationship. In two cases, *Bubar v. Fisher*, 134 Me. 10, 180 A. 923 (1935) and *Richard v. Neault*, 126 Me. 17, 135 A. 524 (1926), the Court dealt with cases which alleged plaintiff knowingly consented to ride with an intoxicated driver. In both cases the Court treated the issue as one of contributory fault.

4. We do not decide whether or not a contract which purports to relieve an employer from liability for negligence toward his employee would be void as against public policy. See *Tarbell v. Rutland R.R. Co.*, 73 Vt. 347, 51 A. 6 (1901). This question is of little concern, however, because the provisions of the

Workmen's Compensation Act, 39 M.R.S.A. § 3, expressly abolish the defense of assumption of the risk. Only a small group of employer-employee cases are excluded from the application of the Workmen's Compensation Act (39 M.R.S.A. § 4).

5. The definition of fault used in our comparative negligence statute is: "Fault means negligence, breach of statutory duty or other act or omission which gives rise to a liability in tort or would, apart from this section, give rise to the defense of contributory negligence." 14 M.R.S.A. § 156.

6. "Failure by an employer to exercise reasonable care to provide a reasonably safe and suitable place for his employee to work in, or reasonably safe and suitable appliances with which to do the work, not so obvious

our comparative negligence statute is clearly intended to abolish the doctrine of so-called voluntary assumption of the risk.[7]

While it is true that 14 M.R.S.A. § 156 does not specifically abolish the defense of assumption of the risk,[8] in most cases the apportionment of fault which the statute is designed to effectuate obviates the need for and alleviates much of the harshness of that common law doctrine. In those cases where assumption of the risk is based upon the plaintiff's lack of due care in encountering a known risk created by the negligence of the defendant—so-called "voluntary" assumption of the risk—the concept overlaps contributory fault. In such circumstances the plaintiff's conduct should be judged in terms of contributory fault and weighed against the causal negligence of the defendant. This approach avoids the harsh "all or nothing" effect of assumption of the risk while at the same time permitting a defendant to reduce his liability for damages when he can demonstrate that the plaintiff's fault contributed to the injuries.

The treatment of assumption of the risk which we today adopt has long been advocated by Dean Prosser [9] and seems to represent the approach adhered to by most of the courts which have recently dealt with the question.

Some jurisdictions have abolished the defense of assumption of the risk, except where the risk was contractually assumed, without any reference to whether or not a comparative negligence statute had been adopted. Alaska, *Leavitt v. Gillaspie,*

Alaska, 443 P.2d 61 (1968); Hawaii, *Bulatao v. Kauai Motors, Ltd.,* 49 Hawaii 1, 406 P.2d 887 (1965); Iowa, *Rosenau v. City of Estherville,* Iowa, 199 N.W.2d 125 (1972); Kentucky, *Parker v. Redden,* Ky., 421 S.W.2d 586 (1967); Michigan, *Felgner v. Anderson,* 375 Mich. 23, 133 N.W.2d 136 (1965); New Hampshire, *Bolduc v. Crain,* 104 N.H. 163, 181 A.2d 641 (1962); New Jersey, *Meistrich v. Casino Arena Attractions, Inc.,* 31 N.J. 44, 155 A.2d 90 (1959); and *McGrath v. American Cyanamid,* 41 N.J. 272, 196 A.2d 238 (1963); New Mexico, *Williamson v. Smith,* 83 N.M. 336, 491 P.2d 1147 (1972); Oregon, *Ritter v. Beals,* 225 Or. 504, 358 P.2d 1080 (1961); Wisconsin, *Gilson v. Drees Bros.,* 19 Wis.2d 252, 120 N.W.2d 63 (1963)

In *Meistrich,* supra, Chief Justice Weintraub expounded upon the confusion which has been wrought by the indiscriminate use of the term "assumption of the risk." He emphasized the distinction between "primary" assumption of the risk (i. e., contractual) and "secondary" assumption of the risk (i. e., implied or voluntary) and concluded:

> "*We are satisfied there is no reason to charge assumption of the risk in its secondary sense as something distinct from contributory negligence, and hence that where the thought is projected in that aspect, the terminology of assumption of the risk should not be used. Rather . . . the subject should be subsumed under the charge of contributory negligence.*" 155 A.2d at 96

---

that an ordinarily prudent person, mindfully going about work with his eyes open, would observe and appreciate them, is negligence. But a defendant may avoid the consequences of this negligence by showing that the plaintiff, with full knowledge and fully aware and without objection, and without the promise that the defect will be remedied, continued in the service in disregard of the failure to provide, and continuing assumed the risk." 125 Me. at 100, 131 A. at 8.

7. By similar reasoning this Court concluded that our comparative negligence statute is

incompatible with the doctrine of last clear chance and that the enactment of the former necessarily abolished the latter. *Cushman v. Perkins,* Me., 245 A.2d 846 (1968).

8. Compare with the Massachusetts comparative negligence statute, 231 Annot. Laws of Mass. § 85, which specifically abolishes assumption of the risk.

9. W. Prosser, *Law of Torts* § 68 (4th ed. 1971)

Other courts have interpreted their comparative negligence statutes as eliminating the need for assumption of the risk where the defense can be said to overlap with contributory negligence. California, *Li v. Yellow Cab Co. of Calif.*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975); Minnesota, *Springrose v. Willmore*, 292 Minn. 23, 192 N.W.2d 826 (1971); Mississippi, *Braswell v. Economy Supply Co.*, Miss., 281 So.2d 669 (1973); and Washington, *Lyons v. Redding Construction Co.*, 83 Wash.2d 86, 515 P.2d 821 (1973)

A statement of the California court in th *Li* case is representative of the reasoning which pervades all of the above opinions:

> "*We think it clear that the adoption of a system of comparative negligence should entail the merger of the defense of assumption of the risk into the general scheme of assessment of liability in proportion to fault in those particular cases in which the form of assumption of risk involved is no more than a variant of contributory negligence.*" 119 Cal.Rptr. at 873, 532 P.2d at 1241.

There appear to be few jurisdictions which adhere to the position that comparative negligence and voluntary assumption of the risk can be harmonized. See *Bugh v. Webb*, 231 Ark. 27, 328 S.W.2d 379 (1959); *Harris v. Hercules, Inc.*, 328 F. Supp. 360 (E.D.Ark.1971)

Appellant directs us to a Florida case, *Dorta v. Blackburn*, Fla.App., 302 So.2d 450 (1973), in which a Florida District Court of Appeals held that the Florida State Supreme Court

> "*appears to have recognized the continued existence of the common law defense of assumption of the risk notwithstanding its adoption of the doctrine of comparative negligence.*" 302 So.2d at 451

More recently, however, another Florida District Court of Appeals took a contrary approach, holding that

> "[*t*]*he defense of assumption of the risk is no less* 'a primitive device of achieving justice between parties who are both at fault' *than was contributory negligence. It should meet the same fate as contributory negligence and not constitute a complete bar to recovery where comparative negligence is the measuring standard for recovery.*" *Rea v. Leadership Housing, Inc.*, Fla.App., 312 So.2d 818, 822 (1975)

Since, in the case now before us, it cannot be seriously contended that the appellee contractually assumed the risk of his injury and since we now decide that the doctrine of voluntary assumption of the risk is no longer viable, it is evident that appellant's request for an instruction on assumption of the risk was properly denied.

The final complaint registered by appellant is, as he says, the verdict of the jury is contrary to the weight of the evidence. There was, to be sure, great conflict in the testimony of the witnesses. It was for the jury to resolve conflicting issues of fact. This the jurors have done. There was ample credible evidence on which their conclusions of fact were based. *General Motors Acceptance Corp. v. Anacone*, 160 Me. 53, 197 A.2d 506 (1964); *Vaillancourt v. Gagnon*, Me., 314 A.2d 405 (1974)

The entry must be:

Appeal denied.

DELAHANTY, J., sat at argument but did not participate further in the case.

All Justices concurring.